## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ELIA A. AGUNDIS,      )
                   )
     Plaintiff,      )
                   )
v.                )     No. 2:17-cv-00536-JEO
                   )
JOHN LEON RICE,    )
                   )
     Defendant.   )

## MEMORANDUM OPINION

Plaintiff Elia Agundis, acting *pro se*, has sued John Leon Rice in his official and individual capacities for numerous alleged intentional torts and criminal and civil rights violations. (Doc. 68).[1] This action was originally filed in the Southern District of Alabama, but was transferred to this court due to a lack of jurisdiction over the claims. (Doc. 62). Rice has filed two motions to dismiss the second amended complaint on various grounds. (Docs. 76 & 78). Rice has also filed a motion to strike Agundis's brief filed in response to one of the motions to dismiss. (Doc. 89). For the reasons stated below, the court finds that the motion to strike is moot and the motions to dismiss are due to be granted and this case dismissed.

---

[1] References herein to "Doc. ___" are to the document numbers assigned by the Clerk of the Court and located at the top of the document.

# I.    STANDARD OF REVIEW

To the extent Rice challenges this court's personal jurisdiction over him pursuant to Federal Rule of Civil Procedure 12(b)(2), the court must undertake a two-step inquiry.  The court is required to determine whether "the exercise of jurisdiction (1) [is] appropriate under the state long-arm statute and (2) does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).

To the extent Rice challenges whether the second amended complaint states a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), the "issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Little v. City of North Miami*, 805 F.2d 962, 965 (11th Cir. 1986) (quoting *Scheur v. Rhodes*, 416 U.S. 232, 236 (1974) (internal quotation marks omitted)).   In considering a motion to dismiss, the court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences. *Hazewood v. Foundation Financial Group, LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008).

Rule 12(b)(6) is read in light of Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," in order

to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotation marks omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e.*, its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.    AGUNDIS'S CLAIMS

Agundis alleges multiple claims against Rice in both his individual and official capacities, including a conspiracy to commit assault; assault and battery; trespass; "aggravated cruelty to animals;" witness tampering; "crossing state

boundaries to [a] violate protection order;" stalking, breaking and entering; rape; sexual assault; intentional infliction of emotional distress; and outrage. (Doc. 68). The events are alleged to have occurred while Rice was a police officer with the City of Columbus, Mississippi or while he was a deputy sheriff with the Oktibbeha County, Mississippi Sheriff's Department. (*Id*. at ¶ 1). Agundis appears to be seeking relief, at least in part, pursuant to 42 U.S.C. § 1983. (*Id*. at 21).

**A.      Background Facts According to the Complaint**

Agundis asserts that Rice broke into her Columbus, Mississippi home between July 2012 and December 2013 on multiple occasions to see Agundis's daughter and to steal food and money. (*Id*. at ¶¶ 2, 6, 22-26 & 39-41). Rice allegedly grew more violent as time went on, and Agundis claims Rice killed her cat in July of 2012, assaulted her (Agundis) various times from July to December 2012, and sexually assaulted and impregnated her in December 2012. (*Id*. at ¶¶ 4, 7, 8, 20-21, 27-28, 42-52). According to Agundis, Rice returned to her residence in March 2013 as Agundis was going to a doctor's appointment. He pushed her into her house and told Agundis she did not need a doctor because "Africa[n] women don't use doctors to have babies." (*Id*. at ¶ 9). Agundis alleges Rice came to the house in July 2013 with a bucket of plaster and forced Agundis's daughter to plaster Agundis's naked body. (*Id*. at ¶ 10). Agundis further asserts that Rice also attempted to "abduct" her new-born child in September 2013. (*Id*. at ¶ 11).

After failing to receive help from various law enforcement agencies in Mississippi, Agundis moved to Gulf Shores, Alabama, in December 2013. (*Id.* at ¶ 13). Thereafter, she obtained a "Protection [From] Abuse Order" in an Alabama court against Rice. (*Id.*) According to Agundis, Rice actively avoided being served with the Protection Order. (*Id.*)

Agundis alleges she received threatening text messages from Rice subsequent to her move to Alabama. She also states that Rice posted death threats directed at her on social media. (*Id*. at ¶ 13).

On December 21, 2015, Agundis was in Birmingham, Alabama to attend a Protection from Abuse hearing. When she arrived at the courthouse with her daughter, Agundis saw Rice and Regina Sykes, another Oktibbeha County deputy sheriff. According to Agundis, Rice identified her to Sykes and Rice had Sykes roll up some "legal documents" and strike her "in the abdomen, causing swelling and bruising." (*Id*. at ¶¶ 14 & 17). Agundis asserts that this incident occurred after Rice had been served with a copy of an "emergency protection order, forbidding him or any third-party under his direction [from] contact[ing] or communicat[ing] with [Agundis]." (*Id*. at ¶ 18).

To place the foregoing in context, it also is helpful to review various proceedings in the state courts of Mississippi. After Agundis had her child in December 2013, Rice filed suit in the Chancery Court of Oktibbeha County,

Mississippi against Agundis, seeking to determine paternity, visitation and custody. (Docs. 17-1; 44-1). Following a trial, the Chancery Court determined Rice was the natural father of the child. The court also awarded the parties joint legal custody of the child, with physical custody remaining with Agundis; visitation for Rice; and child support for the child. (Docs. 17-3 at 172-78; 44-3 at 172). After Agundis moved to Alabama she filed numerous motions opposing the award of visitation rights to Rice. She specifically attempted to have the findings of the Chancery Court set aside. The decision of the Chancery Court was affirmed by the Mississippi Court of Appeals on June 28, 2016. *See Adams v. Rice*,[2] 196 So. 3d 1086 (Miss. Ct. App. 2016).[3] Rice also filed a petition for contempt and

---

[2] The caption for the case lists various names for "Appellant Elle Adams," including Elle Aquilera, Ellie Adams, and Elle Agundis.

[3] By way of additional background, this court notes that the Mississippi Court of Appeals provided the following facts in its opinion:

¶ 1. John Rice and Elle Adams met in 2011 on a dating website. Thereafter, they met in person at Books–A–Million in Columbus, Mississippi. At that time, Rice was employed as a police officer with the Columbus Police Department. According to Rice, he and Adams began dating, and he eventually moved in with Adams and her two daughters. Her daughters were ages three and fifteen. Adams gave Rice a key to the home, and Rice claimed that he often kept Adams's two children. Adams, however, denies ever dating Rice and living together. Adams claimed that Rice would often come over, uninvited and intoxicated. Adams did admit that she gave Rice a key, but she testified that she asked Rice to return the key and even contacted his employer to have it returned. According to Adams, Rice was violent, neglectful, and an alcoholic.

¶ 2. Rice and Adams's relationship, nevertheless, resulted in the birth of their son on September 19, 2013. Rice claimed that he continued to live with Adams until their son was about a month old. According to Rice, they began to have problems once he refused to marry Adams. Rice claimed that Adams

modification of child custody in November 2015, alleging that Agundis refused to allow him visitation or contact with their then two-year old child. *Adams v. Rice*, 2018 WL 2928703 (Miss. Ct. App. Jun. 12, 2018). The Chancery Court found Agundis in contempt for failing to allow Rice to see the child. It also ordered Rice

---

threatened to take the child to Mexico and "adopt the child out." Rice testified that he moved out of Adams's home shortly thereafter. Adams, on other hand, testified that their son was the result of Rice raping her.

¶ 3. On December, 30, 2013, Rice filed a petition to establish paternity, custody, and support of their son in the Chancery Court of Oktibbeha County, Mississippi. Rice initially wanted custody, but that issue was later narrowed down to visitation privileges. On September 3, 2014, Adams filed a counterclaim for custody, child support, and the medical costs incurred in the birth of the child. The trial was held on September 4, 2014. At that time the child was eleven months old.

¶ 4. At trial, Rice called three witnesses to testify on his behalf. Two testified that they had been to the home that Rice and Adams shared and had observed their relationship. One witness also testified that Rice had brought Adams's youngest daughter to her office, and the child appeared to be comfortable with Rice. The chancellor found all three witnesses' testimony to be credible.

¶ 5. The chancellor also found that the three witnesses' statements were highly relevant because Adams claimed that Rice's visitation should be supervised if awarded. Adams testified that any visits Rice made to his friends while he had her younger daughter were done without her permission. Adams also accused Rice of having a strong attachment to "young girls." Adams's oldest daughter and two of her daughter's friends testified on Adams's behalf. The chancellor, however, found that their testimony lacked credibility.

¶ 6. The chancellor, therefore, awarded both parties joint legal custody of the child, with physical custody remaining with Adams. The chancellor established a visitation schedule and ordered Rice to pay child support. The chancellor ordered Rice to pay one-half of the hospital medical expenses associated with the birth of the child. She also ordered Rice to pay fifteen hundred dollars to Starkville Women's Clinic for services in connection with the birth of the child….

*Adams*, 196 So. 3d 1088-89.

to pay his child support arrearage. *Id*. at *2-3. Agundis challenged that decision in a *pro se* appeal. The Mississippi Court of Appeals affirmed the Chancery Court decision on June 12, 2018.

Rice resigned from the City of Columbus Police Department on February 14, 2013. (Doc. 76-1 at 2, ¶ 5).

This federal action was filed while the child custody proceedings were still pending in the Chancery Court. (*See* Docs. 17-3 at 179-245; 44-3 at 179-245). Agundis initially named numerous other Mississippi defendants, including the Chancery Court Judge. (Doc. 1 at 1). All the defendants except Rice previously were dismissed in this action.

**B.      Agundis's Second Amended Complaint**

Agundis's second amended complaint is the operative pleading at this juncture. Therein, she asserts thirteen separate claims against Rice in his individual and official capacities as a former police officer for the City of Columbus, Mississippi (the "City") and as a deputy sheriff for Oktibbeha County, Mississippi (the "County"). She asserts federal claims against Rice purportedly arising under 18 U.S.C. §§ 2261, 2262 and 2265 (doc. 68 at ¶¶ 17 & 34) and under 42 U.S.C. § 1983 (*id*. at 21). The claims include the following: (1) conspiracy to commit assault (Count I); (2) assault and battery (Count II); (3) trespass (Count III); (4) aggravated cruelty to animals (Count IV); (5) witness tampering (Count

V); (6) crossing state boundaries to violate a protection order (Count VI); (7) stalking (Count VII); (8) breaking and entering (Count VIII); (9) rape (Count IX); (10) sexual assault (Count X); (11) invasion of privacy (Count XI); (12) intentional infliction of emotional distress (Count XII); and (13) outrage (Count XIII). (Doc. 68).

Rice responded to the second amended complaint with two motions to dismiss. The first is advanced by Rice in his official capacity as a former police officer of the City. (Doc. 76). Therein, he alleges the amended complaint is due to be dismissed because there is a lack of personal jurisdiction and because the claims relate to the time he was a Columbus police officer and, therefore, are barred by the statute of limitations. (*Id.*) The second is advanced by Rice in his individual capacity and his official capacity as a County deputy sheriff. (Doc. 78). Specifically, he alleges the amended complaint is due to be dismissed because (1) Agundis has no private right of action arising under 18 U.S.C. §§ 2262, 2262 or 2265; (2) of insufficient service; (3) of the statute of limitations; (4) Agundis failed to allege that Rice was acting under color of law; (5) Agundis failed to allege that her injuries were the result of a policy, practice, or custom of the public entity employing Rice; (6) Agundis cannot bring a private action for purported criminal acts; (7) the court should not exercise supplemental jurisdiction if the federal claims are dismissed; (8) the court lacks jurisdiction over the Mississippi-based

state-law claims; and (9) the court should abstain from or not exercise jurisdiction over Agundis's claims. (Doc. 79 at i-ii).[4]

## III.   ANALYSIS

### A.   Personal Jurisdiction

Rice asserts that the claims against him in his official capacity are due to be dismissed because the court lacks jurisdiction over him in his official capacity. (Docs. 77 at 2-3 & 79 at 19- 24). The United States Supreme Court recently has reiterated that "[a] court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case." *Lightfoot v. Cendant Mortg. Corp.*, ___U.S.___, 137 S. Ct. 553, 562 (2017). It also is well-settled in the Eleventh Circuit that a court should address issues involving personal jurisdiction before considering the merits of the remaining matters. *See Madara v. Hall*, 916 F.2d 1501,1513-14 (11th Cir. 1990). In examining the issue of personal jurisdiction, the following principles apply:

> The plaintiff bears the burden of establishing personal jurisdiction over a non-resident defendant. *See S & Davis Intern., Inc. v. The Republic of Yemen*, 218 F.3d 1292, 1303 (11th Cir. 2000). When the issue of personal jurisdiction is decided on the briefs and

---

[4] Counsel for Rice adopts additional defenses in their reply brief that are offered on behalf of Rice in his official capacity with regard to the City. (Doc. 86 at 7). The additional defenses are identical to those asserted by counsel for Rice in his individual capacity and on behalf of Rice in his official capacity with regard to the County. (*Id.*)

accompanying evidence, but without a discretionary evidentiary hearing, a plaintiff satisfies his or her burden by demonstrating a "prima facie case of jurisdiction." *Francosteel Corp,. Unimetal-Normandy v. M/V Charm, Tiki, Mortensen & Lange*, 19 F.3d 624, 626 (11th Cir. 1994); *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990). A plaintiff establishes a prima facie case by submitting evidence sufficient to defeat a motion for judgment notwithstanding the verdict. *See DeLong Equip. Co. v. Washington Mills Abrasive Co*., 840 F.2d 843, 845 (11th Cir. 1988). [Consistent] with that standard of review, the court construes the allegations in the complaint as true if they are uncontroverted by affidavits or deposition testimony. *See Bracewell v. Nicholson Air Serv., Inc*., 748 F.2d 1499, 1504 (11th Cir. 1984). The Eleventh Circuit has explained on more than one occasion that, "[i]f a plaintiff pleads sufficient material facts to establish a basis for personal jurisdiction and a defendant then submits affidavits controverting those allegations, 'the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction[,] unless those affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction.' " *Whitney Information Network, Inc. v. Xcentric Venture, LLC*, Slip No. 06-11888, 2006 WL 2243041, *3 (11th Cir. Aug.1, 2006) (quoting *Meier v. Sun Int'l Hotels, Ltd*., 288 F.3d 1264, 1269 (11th Cir. 2002)). If the evidence conflicts, the court makes reasonable inferences in favor of the plaintiff, particularly when the jurisdictional questions are seemingly intertwined with the merits of the case. *See DeLong*, 840 F.2d at 845.

*Ashton v. Florala Memorial Hosp.*, 2006 WL 2864413,*2 (M.D. Ala. Oct 5, 2006).

Additionally, as previously noted in this action by United States Magistrate Judge

Sojna Bivens:

In an action such as this, the court "undertakes a two-step inquiry to determine whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1274 (2009). As noted supra, because Alabama's long-arm provision, Rule 4.2(a) of the Alabama Rules of

Civil Procedure, is coextensive with due process requirements, <u>see</u> <u>Waterproofing Co. v. Hanby</u>, 431 So. 2d 141, 145 (Ala. 1983), the court need only consider whether the exercise of jurisdiction satisfies the requirements of due process. <u>Oliver v. Merritt Dredging Co</u>., 979 F.2d 827, 830 (11th Cir. 1992). Due process requires both that the defendant have "certain minimum contacts" with the forum state, and if such minimum contacts exist, that the exercise of jurisdiction over the defendant "does not offend traditional notions of fair play and substantial justice." <u>Burnham v. Superior Court of Calif</u>., 495 U.S. 604, 618, 110 S. Ct. 2105, 109 L. Ed. 2d 631 (1990) (quoting <u>Int'l Shoe Co. v. Washington</u>, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945)). "This two-part test embodies the controlling due process principle that a defendant must have 'fair warning' that a particular activity may subject it to the jurisdiction of a foreign sovereign." <u>Vermeulen v. Renault, U.S.A., Inc</u>., 985 F. 2d 1534, 1545 (11th Cir. 1993).

There are two types of personal jurisdiction: "general" and "specific." There is general personal jurisdiction over a party when" the cause of action does not arise out of ... the [party's] activities in the forum State," but there are "continuous and systematic" business contacts with the forum state. <u>See Consolidated Development Corp. v. Sherritt, Inc</u>., 216 F.3d 1286, 1291 (11th Cir. 2000); <u>see also</u> <u>Sloss Indus. Corp. v. Eurisol</u>, 488 F.3d 922, 925 n.3 (11th Cir. 2007)("general jurisdiction ... can only be exercised if the defendant has 'continuous and systematic' contacts with the forum"); <u>Stubbs v. Wyndham Nassau Resort & Crystal Palace Casino</u>, 447 F. 3d 1357, 1360 n.3 (11th Cir. 2006) ("General jurisdiction arises from the defendant's contacts with the forum that are not directly related to the cause of action being litigated."). The due process requirements for general personal jurisdiction are more stringent than for specific personal jurisdiction. <u>Consolidated Development Corp</u>., 216 F.3d at 1292. On the other hand, specific jurisdiction "arises out of a party's activities in the forum that are related to the cause of action alleged in the complaint." <u>Id</u>. at 1291; <u>Helicopteros Nacionales De Colombia v. Hall</u>, 466 U.S. 408, 414 at n.8, 80 L. Ed. 2d 404 (1983). For specific personal jurisdiction, the contacts at issue must satisfy the minimum-contacts test. "Minimum contacts involve three criteria: First, the contacts must be related to the plaintiff's cause of action or have given

rise to it. Second, the contacts must involve some purposeful
availment of the privilege of conducting activities within the forum,
thereby invoking the benefits and protections of its laws. Third, the
defendant's contacts within the forum state must be such that [it]
reasonably anticipate[s] being haled into court there." Sculptchair,
Inc. v. Century Arts, Ltd., 94 F. 3d 623, 631 (11th Cir. 1996) (citation
omitted).

(Doc. 60 at 12-14). Finally, in *Seiferth v. Helicopteros Atuneros, Inc*., the Fifth

Circuit Court of Appeals held that personal jurisdiction is claim specific, but where

there are "multiple claims that arise out of different forum contacts, [the party

asserting jurisdiction] must establish specific jurisdiction for each claim." 472

F.3d 266, 274 (5th Cir. 2006) (citing 5B Charles Alan Wright & Arthur R. Miller,

Federal Practice and Procedure: Civil 3d § 1351, at 299 n.30 (2004) ("There is no

such thing as supplemental specific personal jurisdiction; if separate claims are

pled, specific personal jurisdiction must independently exist for each claim and the

existence of personal jurisdiction for one claim will not provide the basis for

another claim.")).

To the extent that Agundis's complaint alleges claims against Rice in his

official capacity while he was employed by the City, the court finds there is

insufficient contact within the State of Alabama for the Court to exercise personal

jurisdiction over those claims. There is no allegation in Agundis's pleadings that

while acting as a Columbus police officer Rice traveled to Alabama or interacted

with her while she was in Alabama. To the contrary, the record demonstrates Rice

left the Columbus Police Department in March 2013[5] and Agundis did not move to Alabama until December 2013. Accordingly, any claim premised on Rice's official capacity as a police officer with the City is due to be dismissed for lack of personal jurisdiction. This would include all the claims advanced by Agundis in the Second Amended Complaint.[6]

To the extent that Agundis alleges claims against Rice in his official capacity while he was employed by the County, the only contact Rice purportedly had with Agundis after she moved to Alabama was occasional texts and personal interaction with Rice and Sykes in Birmingham on December 21, 2015. Accordingly, any claims alleging liability premised on Rice's conduct in an official capacity as an County deputy sheriff for events that occurred in Columbus, Mississippi are due to be dismissed for lack of personal jurisdiction. This would include the assault and battery claim (Count II); the trespass claim (Count III); the aggravated cruelty to animals claim (Count IV); the stalking claim (Count VII); the breaking and entering claim (Count VIII); the rape claim (Count IX); the sexual assault claim (Count X); and the invasion of privacy claim (Count XI). It would also include the intentional infliction of emotional distress (Count XII) and the outrage claims (Count XIII) to the extent they are premised on conduct occurring

---

[5] Agundis does not dispute this fact.

[6] Agundis states in her response to the defendant's motion to strike her reply brief that there is no longer any claim against Rice in his official capacity as a Columbus City police officer. (*See* Doc. 90 at 1).

in Mississippi. Each of these claims involves actions in Mississippi before Agundis moved to Alabama. Specifically, the assault and battery is alleged to have occurred during July 2012 and October 2013 at Agundis's home; the trespass is alleged to have occurred from June 7, 2012, until December 2013 at her residence; the aggravated cruelty to animals is alleged to have occurred in September 2013; the stalking is alleged to have occurred in Columbus from July 2012 until December 2013; the breaking and entering is alleged to have occurred from July 2012 to December 2013 at Agundis's residence; the rape is alleged to have occurred on December 12, 2012; the sexual assault is alleged to have occurred July 2013; the invasion of privacy is alleged to have occurred while Rice was with the City; and the intentional infliction of emotional distress and outrage claims relate to events occurring in Agundis's home in Columbus and before she moved to Alabama in December 2013. The conspiracy claim (Count I), the witness tampering claim (Count V), the violating a protection order claim (Count VI), the intentional infliction of emotional stress claim (Count XII) and the outrage claim (Count XIII) will be further addressed below to the extent they are arguably premised on conduct occurring in Alabama.

**B.      Insufficient Process and Service of Process**

Rice next asserts that that "the complaint is due to be dismissed … for insufficient service of process and insufficient process under [Fed. R. Civ. P.]

12(b)(4) and (5)."[7]  (Doc. 79 at 11 (footnote omitted)).  Specifically, Rice asserts that Agundis has not properly served him with regard to this action.  He complains that Agundis improperly attempted to serve him at the Oktibbeha County Sheriff's Department.  (*Id*. at 10).  He also notes that he has consistently objected "to the process and service of process in this action."  (*Id*. at 11, n.6 (citing Doc. 17 at 1 and doc. 44 at 1)).  Agundis responds that she is *pro se*, she consulted with the Clerk of the Court for the Southern District of Alabama, and Rice has answered. (Doc. 84 at 9). She also asserts she properly served him by certified mail at his residence and that Rice is attempting to avoid service.  (*Id*. at 9-10).

This issue is controlled by Rule 4 of the Federal Rules of Civil Procedure dealing with service of process upon an individual.  Rule 4(e) provides:

> Unless federal law provides otherwise, an individual--other than a minor, an incompetent person, or a person whose waiver has been filed--may be served in a judicial district of the United States by:

---

[7] In addressing this section of Rice's motion to dismiss, it is appropriate to note the following:

> At the outset it is necessary to distinguish the motion under Rule 12(b)(4) from that under Rule 12(b)(5).  An objection under Rule 12(b)(4) concerns the form of the process rather than the manner or method of its service.  Technically, therefore, a Rule 12(b)(4) motion is proper only to challenge noncompliance with the provisions of Rule 4(b) or any applicable provision incorporated by Rule 4(b) that deals specifically with the content of the summons.[]  A Rule 12(b)(5) motion is the proper vehicle for challenging the mode of delivery or the lack of delivery[] of the summons and complaint.  Other than those cases in which it is confused with a motion under Rule 12(b)(5),[] a motion under Rule 12(b)(4) is fairly rare.

Wright & Miller, Federal Practice and Procedure 3d § 1353 (2017) (footnotes omitted).

(1) **following state law** for serving a summons in an action brought in courts of general jurisdiction **in the state where the district court is located or where service is made**; or

(2) doing any of the following:

(A) delivering a copy of the summons and of the complaint to the individual personally;

(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or

(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. P. 4(e) (bold added)).

The Alabama Rules of Civil Procedure allow for service by certified mail. Ala. R. Civ. P. 4(i)(2). Service is deemed complete under Alabama state law "from the date of delivery to the named addressee or the addressee's agent as evidenced by [a] signature on the return receipt." Ala. R. Civ. P. 4(i)(2)(C).

Mississippi law provides for service upon an individual "by sheriff or process server" by "delivering a copy of the summons and of the complaint to him personally or to an agent authorized by appointment or by law to receive service of process;" or

if service … cannot be made with reasonable diligence, by leaving a copy of the summons and complaint at the defendant's usual place of abode with the defendant's spouse or some other person of the

defendant's family above the age of sixteen years who is willing to receive service, and by thereafter mailing a copy of the summons and complaint (by first class mail, postage prepaid) to the person to be served at the place where a copy of the summons and of the complaint were left. Service of a summons in this manner is deemed complete on the 10th day after such mailing.

Miss. R. Civ. P. 4(d)(1)(A) & (B). An individual may also be served "by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment ... and a return envelope, postage prepaid, addressed to the sender." Miss. R. Civ. P. 4(c)(3)(A). "The notice and acknowledgment of receipt of summons and complaint shall be executed under oath or affirmation." Miss. R. Civ. P. 4(c)(3)(C). "If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint may be made in any other manner permitted by this rule." Miss. R. Civ. P. 4(c)(3)(B). Additionally, for out-of-state defendants, Mississippi provides that service may be accomplished by "sending a copy of the summons and of the complaint to the person to be served by certified mail, return receipt requested." Miss. R. Civ. P. 4(c)(5). Where the defendant is a natural person, the envelope containing the summons and complaint shall be marked "restricted delivery." *Id.* "Service by this

method shall be deemed complete as of the date of delivery as evidenced by the return receipt or by the returned envelope marked 'Refused.'" *Id.*

The court is not satisfied that Agundis has obtained adequate service on Rice under any of the available means. While it appears Agundis attempted service on Rice at his residence via certified receipt, there is no evidence that the complaint was properly served on Rice. To the contrary, the "UPS Product Tracking & Reporting" sheet states that "No Authorized Recipient Available." (Doc. 13 at 1-2). The notation in the "Destination and Origin" section of the form, which provides, "John Rice has been voiding service. He [is] doing [the] same with new ex-parte order[.]" (*id*. at 1), is not adequate to demonstrate service. This conclusory statement by an unknown writer is totally unacceptable. There is no evidence that Rice has been served. *See*, *e.g*., *Bloodgood v. Leatherwood*, 25 So. 3d 1047, 1051 (Miss. 2002) ("A returned envelope marked 'unclaimed' is insufficient to satisfy service requirements under Rule 4(c)(5).").

To the extent Agundis relies on the fact that Joe Berry, an employee in a support staff/records clerk position at the Oktibbeha County Sheriff's Office, accepted a copy of the summons and complaint in this action, that does not constitute adequate service on Rice. Berry is not an authorized agent of Rice. Still further, Agundis acknowledges in her filings that Rice has not been served. (*See* Doc. 13 at 2 ("John Rice has been voiding service.")).

There is no evidence that Agundis has attempted service by publication. *See* Ala. R. Civ. P. 4.3; Miss. R. Civ. P. 4(c)(4). Nor has a request for waiver of service provided by Federal Rule of Civil Procedure 4(d)(1) has ever been attempted. Thus, the court finds that Agundis has not properly served Rice.

## C. Statute of Limitations

Rice next asserts that the § 1983 claims are due to be dismissed because they are precluded by the statute of limitations. (Docs. 77 at 3-4 & 79 at 11-12). Claims brought pursuant to § 1983 are governed by the Alabama statute of limitations for personal injury actions. *See Scales v. Talladega County Dept. of Human Resources*, 2012 WL 3775837, *13 (N.D. Ala. Aug. 27, 2012) (Hopkins, J.) ("The Alabama statute of limitations squarely applies to her claims that arise under Alabama law, as well as her federal claims arising under sections 1983 and 1985.").

Agundis filed her complaint on March 23, 2016. Therefore, to the extent she asserts claims under § 1983, they are controlled by the two year statute of limitations in Ala. Code § 6-2-38(l). *See Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989). Thus, any § 1983 claims that predate March 23, 2014, are barred by the statute of limitations and are due to be dismissed. This would include all of the claims except for the conspiracy to commit assault, witness tampering, crossing state lines to violate a protection order and the

intentional infliction of emotional stress and outrage claims because those other claims involve conduct that predates the limitations period. (*Compare* Counts II-IV and VII-XI with Counts I, V-VI, and XII-XIII).[8] The remaining claims would not be barred under the statute of limitations to the extent they implicate conduct by Rice after Agundis moved to Alabama. This includes the conduct occurring in Birmingham when Rice and Sykes came for the hearing on the Protection from Abuse Order.

### D.   Color of Law

Rice next asserts that Agundis's § l983 claims are due to be dismissed because she fails to allege sufficient facts to show that he was acting under "color of law" as required to support such a claim.[9] (Doc. 79 at 12-13). Agundis argues that she has met this element because Rice oftentimes conducted the alleged activities while he was wearing his police uniform. By way of example, she states in her reply that she alleged in her complaint that when Rice went to a medical clinic in Starkville, Mississippi to illegally obtain her medical records, he was wearing his Columbus police uniform.[10] (*See* Doc. 84 at 18).

---

[8] See the discussion herein on pages 14-15.

[9] Rice also adopts this argument in his reply related to the claims against the City. (*See* Doc. 86 at 7).

[10] That is not accurate. The Second Amended Complaint alleges that Rice "contacted the woman's clinic in Starkville MS where the Plaintiff went after the rape and obtained illegally the

A § 1983 plaintiff must show that she was deprived of a federal right by a person acting under color of state law. *Almand v. DeKalb County, Ga.*, 103 F.3d 1510, 1512 (11th Cir. 1997). "A person acts under color of state law when he acts with authority possessed by virtue of his employment with the state. *Edwards v. Wallace Community College*, 49 F.3d 1517, 1522 (11th Cir.1995) (citing *West v. Atkins*, 487 U.S. 42, 48-50, 108 S. Ct. 2250, 2255, 101 L. Ed. 2d 40 (1988)). Not all acts by state employees are acts under color of law. *Id*. at 1523. 'The dispositive issue is whether the official was acting pursuant to the power he/she possessed by state authority or acting only as a private individual.' *Id*. (citing *Monroe v. Pape*, 365 U.S. 167, 183-84 (1961), *overruled on other grounds by Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978))." *Almand*, 103 F.3d at 1513.

In discussing this issue, the court will apply the argument to the only arguably viable § 1983 claim – Count I alleging a conspiracy by Rice and Sykes to assault Agundis. This claim fails the test for a number of reasons. Contrary to Agundis's claim in her reply, she has not adequately alleged that Rice and Sykes were acting under color of law while they were in Birmingham. Simply stating that they are deputies does not demonstrate that they were acting under color of

---

medical records they possessed regarding any treatment with the Plaintiff…." (Doc. 68 at ¶ 47). Agundis does not allege that Rice was wearing his uniform. Even if he was in uniform, as noted already, this conduct occurred outside the statute of limitations.

law at the relevant time.  This is particularly true in this instance where they are in another state and, according to Agundis, Rice was at the "Birmingham Family Court" for a "Protection from Abuse" hearing precipitated by her actions in seeking the order.  (*See* Doc. 68 at ¶ 17).  Second, as stated above, not all actions by a state employee are acts under color of law.

In *Butler v. Sheriff of Palm Beach Cnty*, 685 F.3d 1261, 1263-67 (11th Cir. 2012), the defendant corrections officer at a "boot-camp facility for minors" came home to find the plaintiff hiding "stark naked" in her daughter's closet after he had engage in relations with her nineteen-year-old daughter.  When the defendant entered her daughter's room, she removed her utility belt and placed it on the bed. Upon discovering the plaintiff, she "yelled at him and punched him one time."  *Id*. at 1263.  She put her utility belt and gun back on after she discovered the plaintiff. She then drew her weapon and told the plaintiff "that if he moved or did not follow her commands, she would shoot him."  *Id*.  The defendant then handcuffed the plaintiff but eventually released him.  She told him of the consequences of filing charges against her or even "thinking about" reporting the incident.  *Id*. at 1264. The Eleventh Circuit found that the defendant was not acting under color of law, but as "any irate mother with an anger management problem" would have acted. *Id*. at 1267.  The court further found it irrelevant that the corrections officer used her duty weapon and handcuffs to assault the plaintiff because these items were not

restricted to law enforcement officers and the mere fact that she carried them while on duty did not turn her actions into those taken under color of law.  *Id*. at 1267-68.

In reaching its decision, the *Butler* court examined two earlier cases – *Almand* and *United States v. Tarpley*, 945 F.2d 806 (5th Cir. 1991).  The court stated:

> Our decision in *Almand* (which is controlling authority) and the Fifth Circuit's decision in *United States v. Tarpley*, 945 F.2d 806 (5th Cir. 1991) (which is persuasive authority), illustrate the line that is drawn in § 1983 cases of this type.  In the *Almand* case, we considered the conduct of a police officer who forced his way into a woman's apartment and raped her.  103 F.3d at 1511-12.  The woman had originally let the officer in "because of his status as a police officer" and his proffer of information about those responsible for the rape of the woman's daughter about a month earlier.  *Id*. at 1514–15.  Afterwards, when he propositioned her, the woman told the officer to leave and after he did she closed the door.  *Id*. at 1515.  Immediately thereafter, the officer "forced open the closed door with such shock that wood broke off the door.  Having pushed open the door, [he] reentered [her] apartment, physically struggled with her, and forcibly raped her."  *Id*. at 1512.

> We concluded in *Almand* that the officer's conduct in breaking in and raping the woman was a private act, not accomplished because of power he possessed under state law, and in that respect "he was no different from any other ruffian."  *Id*. at 1515.  We explained that "any thug or burglar could have committed the same violent acts."  *Id*.  For those reasons, we decided that the officer's "conduct (if he did the things alleged) was the act of a private citizen and did not violate the Constitution," and we concluded that the district court should have granted summary judgment in his favor on the § 1983 claim.  *Id*.

> The *Tarpley* case was different.  William Tarpley, a deputy sheriff, devised a plan to assault Kerry Vestal, a man who had engaged in an extramarital affair with Tarpley's wife.  *Tarpley*, 945 F.2d at 807.  With the help of his faithless wife, Tarpley planned to

lure Vestal to his house for the assault. *See id*. at 807-08. While at the sheriff's station, Tarpley and a fellow deputy, Michael Pena, made "sap gloves," which have "rubber hosing filled with metal or lead shot attached to the fingers." *Id*. at 808. Tarpley planned to use those weapons to attack Vestal. *See id*.

When the unsuspecting Vestal arrived at Tarpley's house, the wife pulled him inside where Tarpley tackled him and repeatedly hit him in the head. *Id*. Tarpley then put his service pistol in Vestal's mouth, and told him that "he was a sergeant on the police department, that he would and should kill Vestal, and that he could get away with it because he was a cop." *Id*. Tarpley said, " 'I'll kill you. I'm a cop. I can.' " *Id*. The Tarpleys then summoned Deputy Pena to the house, and Tarpley told Vestal that Pena was "a fellow sergeant from the police department." *Id*. Deputy Pena confirmed to Vestal that Tarpley had shot people in the past. *Id*. After the two deputies finally let Vestal go, they followed him in Pena's squad car and radioed another officer to do the same. *Id*. Both squad cars followed Vestal to the edge of town. *Id*.

Tarpley contended that "he was acting as a jealous husband, not as a police officer." *Id*. at 809. The Fifth Circuit rejected that contention, holding that there was sufficient evidence for a jury to find that Tarpley acted under color of law. *Id*. The court reasoned:

> Tarpley did more than simply use his service weapon and identify himself as a police officer. At several points during his assault of Vestal, he claimed to have special authority for his actions by virtue of his official status. He claimed that he could kill Vestal because he was an officer of the law. Significantly, Tarpley summoned another police officer from the sheriff's station and identified him as a fellow officer and ally. The men then proceeded to run Vestal out of town in their squad car. The presence of police and the air of official authority pervaded the entire incident.

*Id*.

*Butler*, 685 F.3d at 1266-67.

As to the conspiracy claim, there is no allegation that Rice or Sykes were acting under color of law while they were in Birmingham. The allegations only support a conclusion that they were acting as private citizens when they were in Birmingham. Agundis does not allege they were in uniform or how they were acting in an official capacity as Oktibbeha County deputies at that time. Such an inference is not supported by her allegations. Because § 1983 is intended to prevent actions that are a "[m]isuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law... ," Agundis fails to state a claim under § 1983 in Count I because she alleges actions by Rice as a private citizen engaged in a domestic dispute. *Butler*, 685 F.3d at 1268 (citations omitted). The sole fact that Rice and Sykes are also deputy sheriffs is not sufficient to state a claim against them under § 1983.

**E.     Absence of a Private Right of Action**

Rice next alleges that to the extent Agundis attempts to assert claims pursuant to various criminal statutes, they are precluded because those provisions do not authorize private causes of action. (Doc. 79 at 6-9 & 18-20). With regard to the "crossing state boundaries to violate  [a] protection order" claim (Count VI), Agundis appears to premise her claim under 18 U.S.C. §§ 2261 (interstate domestic violence), 2262 (interstate violation of a protection order) & 2265 (full

faith and credit to protection orders). (*See* Doc. 68 at ¶ 34). She also references these statutes in her conspiracy to commit assault claim (Count I). (*Id*. at ¶ 18).

The general rule is that private citizens do not have "a judicially cognizable interest in the prosecution or nonprosecution of another," nor do they have the "right to compel a State to enforce its laws." *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986). The relevant question at this juncture is whether Agundis has a private right of action under these statutes.

The Eleventh Circuit has held that no private right of action exists under Section 2261. *Rock v. BAE Systems, Inc.*, 556 F. App'x 869, 871 (11th Cir. 2014) ("Section 2261 also does not explicitly contain a private right of action . . . .").[11] The court also has held that § 2261A (the interstate stalking statute) also does not provide a private cause of action. *Id*. Both states criminalize interstate travel involving domestic violence or stalking, but that is all they do. Section 2262 criminalizes crossing state lines with the intention of violating a protection order and lists the punishment for any violations. As with the other statutes, nothing in the text of that statute indicates that Congress intended to create a private right of action. *See Hopson v. Commonwealth Attorney's Office*, 2013 WL 1411234, at *4 (W.D. Ky. Apr. 8, 2013) ("There is nothing in § 2262(a)(1) that would lead to . . . a conclusion [that a private right of action exists under the statute.] Violations of §

---

[11] Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding precedent; however, they may be cited as persuasive authority. 11th Cir. R. 36-2.

2262(a)(1) are criminal offenses. Congress specifically set forth that violations of § 2262(a)(1) are punishable by imprisonment or fines or both.... There is no indication that Congress intended to create a private cause of action under 18 U.S.C. § 2262(a)(1)."). Section 2265 generally provides that a protection order meeting the requirements of the statute and entered by a state shall be afforded full faith and credit in another state. 18 U.S.C. § 2265. Nothing in this statute creates a private right of action. *See Smith v. Daniel*, 2017 WL 1352229 at *2 (N.D. Fla. Mar. 17, 2017) (Plaintiff lacks standing to bring claims under §§ 2261A, 2262 & 2265), report and recommendation adopted over objections, *Smith v. Daniel*, 2017 WL 1370734 (N.D. Fla. Apr. 5, 2017). As a result of the foregoing, the court finds that the interstate travel to violate a protection order claim (Count VI) is due to be dismissed. Similarly, to the extent the conspiracy to commit assault claim (Count I) is premised on these criminal statutes, the claim is also due to be dismissed.

To the extent Agundis asserts a "witness tampering" claim (Count V), she fails to specify the basis of her claim. (*See* Doc. 68 at ¶¶ 30-32). This claim fails for the reason just discussed – there is no private cause of action for such a claim. Both state and federal statutes prohibit intimidating or threatening a witness. *See Madden v. Abate,* 800 F. Supp. 2d 604, 606-07 (D. Vt. 2011) (existence of a criminal statute prohibiting certain conduct does not in and of itself create a civil cause of action that may be brought by the victim of that conduct). The federal

witness tampering statute makes it a crime for anyone to intentionally use physical force or the threat of physical force to prevent, influence, or delay the testimony of any person in an official proceeding. 18 U.S.C. § 1512(a)(2). This statute, which is applicable only in federal proceedings, does not create a private right of action. *Roberts v. Choate Constr. Co.*, 2011 WL 5006469, at * 2 (M.D. Fla. Oct. 20, 2011). Similarly, the applicable Alabama criminal code provisions addressing witness intimidation and tampering do not include language creating a private cause of action. *See* Ala. Code §§ 13A-10-123 (intimidating a witness) and 124 (tampering with a witness); *see also Sulehria v. New York*, 2012 WL 1288760, *11 (N.D.N.Y. Feb. 8, 2012) ("As with federal crimes, plaintiff has no private right of action to enforce state criminal statutes and lacks the authority to institute a criminal investigation."). Thus, Agundis's witness tampering claim (Count V) is due to be dismissed.

### F. *Twombly/Iqbal* pleading standard

In the first count, Agundis brings a claim against Rice alleging a "[c]onspiracy to [c]ommit [an a]ssault." (Doc. 68 at 11). Agundis asserts that Rice and Sykes "conspired to circumvent the contact restrictions of the Protection from Abuse Order...." (*Id.* at ¶ 14). Agundis further claims that Rice "identified [Agundis] to Sheriff Sykes and instructed her to tightly wind up legal documents

into the form of a baton to serve Plaintiff and strike Plaintiff in her abdomen...." (*Id*. at ¶ 17).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Id.* Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" *i.e*., its "factual content ... allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557).

This claim does not contain sufficient factual detail to establish a claim to relief that is plausible on its face. Agundis claims that Rice "conspired" to assault the plaintiff and that he "instructed" Sheriff Sykes to assault her, but Agundis provides no supporting factual material to make this claim any more than conclusory statements. (*See* Doc. 68 at 9 & 11). While *pro se* complaints are to be

construed liberally, it must still conform to established pleading standards. Therefore, Count I is due to be dismissed on this additional ground.

The intentional infliction of emotion distress and outrage claims (Counts XII and XIII) are also premised on conclusory allegations that merely recount some of the elements of such claims. In both claims, Agundis asserts that she has been subjected to "pain, suffering, loss of liberty, emotional distress, mental anguish, embarrassment, and humiliation...." (Doc. 68 at 20-21). However, as already thoroughly discussed, the allegations do not provide any factual information demonstrating that these claims concern events that occurred after she arrived in Alabama. To the extent she does provide any detail, the events alleged relate events occurring in Mississippi in 2013 before she moved to Gulf Shores, Alabama in 2015. By way of example, she alleges, "The Defendants [sic] intentionally breached that duty [(not to engage in conduct likely to cause severe emotional distress)] by intimidation, physically assaulting, stalking, harassing, threatening, sexually assaulting, raping, stealing properties [sic] from the plaintiff's home and person, as well as causing Plaintiff to lose control of and become at times a hostage in her own home." (*Id*. at ¶ 57). The court finds that the "Intentional Infliction of Emotional Distress" claim (Count XII) is due to be dismissed.

To the extent Agundis advances an "Outrage" claim (Count XIII) premised on the same allegations (*id.* at ¶ 59), the court finds they also are insufficient to

state a claim for relief.  In order to demonstrate an outrage claim, a plaintiff must allege conduct on the part of the defendant (1) that was intentional or reckless; (2) that was extreme and outrageous; and (3) that caused emotional distress so severe that no reasonable person could be expected to endure it.  *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 (Ala. 1997).  Although not specifically stated, even if Agundis is advancing this claim premised on the fact that Sykes struck her in the stomach with rolled up papers, that is not sufficient to state an outrage claim to support the award of relief against Rice.[12]

## IV.  CONCLUSION

Premised on the foregoing, the defendant's motions to dismiss (doc. 76 & 78) are due to be granted as to all the claims regardless of whether they are brought against Rice in his individual or official capacity.  Additionally, the court finds that the defendant's motion to strike Agundis's reply brief (doc. 89) is moot.  An appropriate order will be entered contemporaneously herewith.

**DATED**, this 13th day of July, 2018.

**JOHN E. OTT**
Chief United States Magistrate Judge

---

[12] The court pretermits any discussion regarding the application of *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983).